**Sarah A. DAVIS, Appellant,**

v.

**BUTLER MANUFACTURING COMPANY, Respondent.**

**No. WD 34024.**

Missouri Court of Appeals, Western District.

Aug. 2, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Sept. 28, 1983.

Application to Transfer Denied Nov. 22, 1983.

Stanley L. Wiles, Kansas City, for appellant.

Jeffrey T. O'Connor, Kansas City, for respondent.

BEFORE PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

Appellant claimed worker's compensation benefits for an alleged abnormal strain which occurred during the course of her employment in lifting and "flipping" doors on a table about three feet high in pallets. The administrative law judge denied compensation and the Industrial Commission affirmed. Pursuant to Section 287.495, RSMo (Laws 1980, p. 374, Section 1), appellant has perfected her direct appeal to this court.

Butler's motion for rehearing was sustained because a statement in its brief, "It is conceded by the respondents, and they make no argument to the contrary, that an abnormal strain causing injury to a workman may be classified as an accident" was misconstrued as being an admission or concession of that fact. The case has therefore been resubmitted to consider whether the determination by the Industrial Commission that appellant did not sustain an accident was supported by competent and substantial evidence. Section 287.495, RSMo (Laws 1980, p. 374, Section 1.)

Prior to February 19, 1981, appellant was an unload operator in Butler's paint department, with duties involving lifting, unless the objects were too heavy, in which case a crane was used. On that date, she was

loaned out from her department to one assembling metal doors, where she and her taller male co-worker would paint welding spots and insert parts with screws after a door was put on a table to a pallet on the floor. The door weighed 168 pounds, and appellant had flipped some doors, but not that heavy and she did it all day. The co-worker bore half that weight in lifting and flipping the door. During that day of work, appellant did not notice any unusual pain, and had no back problems in prior work for Butler. After arriving home that night, in one to three hours she had pain in the back from the waist down. The pain was not too bad that night but the next morning, it was very bad—she could hardly get up and down. She went to work, however, in her regular job of operating the crane, "unload operator", and did some lifting there. She then had pain in her back all day, with a problem, but she "made it". She went home, went to bed and spent the weekend in bed with the pain still there. At 7:30 a.m. the next Monday morning, on reporting to work, she saw the company nurse who sent her to the Industrial Clinic North, where a Dr. Olmstead examined her and prescribed therapy—ultrasound and stretching, which she got that day and was sent home. A therapy schedule was set up for something like three times a week, and appellant was given muscle relaxing pills and was told to take three baths a day at home. The pain she was experiencing was, during that time, from her low back, through her buttocks and down into her legs. The therapy clinic advised appellant that they had done all they could for her and wanted to send her to a specialist. After 4 or 5 days, she was sent to a Dr. Ise who sent her to Northland Physical Therapy Clinic where she received therapy for her back. and legs every day while there.

Appellant testified that she was off work for seven weeks from the time she sustained injuries because of the unusual and abnormal strain on February 19, 1981. She was still having pain when she went back to work in April, and received therapy for one week at the clinic, and also at Butler's medical facility for a total of 8 weeks, until the first part of May, 1981. On returning to work in the early part of September 1981, she had pain in performing lifting duties, and the pain had persisted to the date of hearing, December 3, 1981.

Butler contends, relying on existing case law, that the strain described by appellant is not compensable because it was not manifested by immediate evidence of any injury. The administrative law judge, whose findings and conclusions were adopted by the Industrial Commission, ruled in accordance with Butler's contention saying: "Clearly the claimant did not describe an accident in the usual sense of a slip, trip, fall or traumatic contact. It is the claimant's contention that the events of the day constituted an abnormal or unusual strain." And, citing *Crow v. Missouri Implement Tractor Company,* 307 S.W.2d 401 (Mo. banc 1957); and *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292 (Mo.1965), the administrative law judge said further: "However, in these cases, and in numerous others, the unusual or abnormal strain was manifested by immediate evidence of an injury. It should be noted that Section 287.020(2) V.A.M.S. provides that the event constituting an accident produce at the time objective symptoms of an injury. * * * The claimant's own testimony fails to establish that any unusual or abnormal strain occurred which produced at the time objective symptoms of an injury. * * * I find and believe from all of the credible evidence that the claimant did not sustain an accident on February 19, 1981, and her claim for compensation, therefore, must be and is here denied."

The narrow rule of construction of the term "accident", for which Butler contends, has been recently abandoned in *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781 (Mo. banc 1983), rehearing denied, March 29, 1983. The Court reviewed the judicial history of the Act from its inception, noting the early cases of *Carr v. Murch Bros. Constr. Co.,* 223 Mo.App. 788, 21 S.W.2d 897 (Mo.App.1929); and *Lawrence v. Stark Bros. Nurseries & Orchards Co.,* 18 S.W.2d 89 (Mo.App.1929), which ap-

plied a liberal construction to the term "accident" allowing compensation for injuries sustained in the usual course of one's duties, without evidence of any unusual strain, and for an unexpected or unforeseen event (result) ensuing from an usual and intentional act or movement of the claimant done in the ordinary course of his employment. These early rules were abrogated in *State ex rel. Hussman-Ligonier Co. v. Hughes,* 348 Mo. 319, 153 S.W.2d 40 (Mo.1941), which set the precedent in a long line of cases for the application of a narrow rule of construction, held in *Wolfgeher* to be contrary to the decisions of an overwhelming majority of states (646 S.W.2d page 785), and which should no longer be followed. The court said also that the narrow construction is inconsistent with the broad purposes of worker's compensation and the principles upon which the Act is to be applied; that the narrow concept of "accident" also prevents compensation for gradual and progressive injuries which result from repeated or constant exposure to on-the-job hazards, even though the injuries are clearly work-related; and that so long as an injury is clearly job-related, it seems inconsistent and inequitable to deny compensation for the injury, but to allow compensation for an occupational disease or illness (which under the Act do not require an accident).

See also the recent case of Jack R. Wynn, Deceased, *Margaret T. Wynn, Widow, et al., v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87 (Mo.banc 1983), following Wolfgeher, supra, holding that there was a compensable death claim where an over-the-road truck driver suffered a work-related heart attack during the course of his employment (driving an empty trailer on a particularly hot day).

In this case, appellant's evidence as to strain brought on by lifting and flipping doors was not disputed, "Furthermore, where the facts are not disputed the award that should be entered by the Commission becomes a question of law and the Commission's ruling is not binding on the appellate court. (Citing case.)" *Ikerman v. Koch,* 580 S.W.2d 273, 278[1, 2] (Mo. banc 1979). The ruling of the Industrial Commission that there was no "accident" is not supported by any competent substantial evidence, and to the contrary, under the *Wolfgeher* case, supra, as a matter of law, it must be held that appellant's claimed injury was "job related" or "work related". The Industrial Commission erred as a matter of law in denying appellant compensation on the ground that she had not suffered an accident. In so ruling, neither it nor the administrative law judge reached the issues of whether there was a causal connection between the job-related injury and the appellant's disability, or the percentage thereof, if so. The award is reversed and the claim is remanded for determination of those further issues.

All concur.