**Harvey L. RECTOR, Claimant–
Respondent,**

**v.**

**CITY OF SPRINGFIELD,
Employer–Appellant.**

**No. 17360.**

Missouri Court of Appeals,
Southern District,
En Banc.

Nov. 12, 1991.

Motion for Rehearing or Transfer
Denied Dec. 9, 1991.

Application to Transfer Denied
Jan. 28, 1992.

William C. Love, Harrison, Tucker & Hyde, Springfield, for employer-appellant.

Ben K. Upp, Montgomery, Twibell, Upp & Greene, Springfield, for claimant-respondent.

SHRUM, Judge.

In this workers' compensation case, the employer City of Springfield appeals from the final award entered by the Labor and Industrial Relations Commission allowing compensation to the employee Harvey Rector.

The issue is whether, viewing the evidence most favorably to the Commission's order, there is sufficient evidence to support its finding that the employee was involved in a different on-the-job accident in 1987 resulting in additional partial disability to him or whether, as the employer contends, the only finding supported by the evidence is that the employee's condition is a continuation of a preexisting work-related injury which occurred in July 1986.

Because there was substantial evidence to support the Commission's order, we affirm.

## SCOPE OF REVIEW

The scope of our review in a workers' compensation case is stated in Mo. Const. art V, § 18 and § 287.495, RSMo 1986.[1] From this statute, the constitutional provision, and their predecessors, certain other principles have developed. *Causey v. McCord,* 774 S.W.2d 898, 899 (Mo.App.1989). We review workers' compensation cases in the light most favorable to the award of the Commission and uphold the decision of the Commission if it is supported by competent and substantial evidence on the whole record. *Phillips v. Ozark Bank,* 803 S.W.2d 662, 663 (Mo.App. 1991); *McFarland v. Bollinger,* 792 S.W.2d 903, 904 (Mo.App.1990). We cannot substitute our judgment for that of the Commission. *McFarland,* 792 S.W.2d at 904. We must disregard any evidence which might support a finding different from that of the Commission and that is true although a finding of the Commission to the contrary would be supported by the evidence. *Phillips,* 803 S.W.2d at 663.

## FACTS

The employee was a Springfield policeman until his retirement (by reason of disability) in December 1987. Earlier, on July 23, 1986, he injured his low back when, during an auto-accident investigation, he pried or pulled open a car door in an effort to free a trapped passenger (the 1986 accident). Medically he was diagnosed as having sustained a strain and sprain of his low back and a herniation of an intervertebral disc in the 1986 accident. The herniated

---

**1.** Section 287.495, RSMo 1986, states, in part:
1. ... The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

disc was surgically repaired by Dr. Whitlock.

Subsequent to the surgery, Dr. Whitlock released the employee in December 1986 to return to his former job as a city patrolman with no restriction imposed on the employee's activities. Before his release to return to work, the employee made Dr. Whitlock aware of his job duties and, when released to work, the employee still had some tenderness in his low back. It did not, however, cause him difficulty in performing his job. When Dr. Whitlock filed his Form 9 report with the Division of Worker's Compensation, he rated the employee's permanent partial disability from the 1986 accident as 10% of the body as a whole.

On February 3, 1987, the employee saw Dr. William Folck for evaluation.[2] Concerning that examination, Dr. Folck testified that the employee had a fairly good clinical result following the surgery. However, he found moderate soft tissue thickening in the area of the surgery and found the employee had some restriction of motion. As a result of the February 1987 examination, Dr. Folck evaluated his disability at 20% of the body.

On April 2, 1987, the employee's claim for the July 1986 accident was settled by compromise. As the Commission noted, Dr. Whitlock's 10% rating and Dr. Folck's 20% rating were averaged in arriving at a 15% permanent partial disability rating of the employee.

The normal duties of the employee, to which he returned beginning December 1986, involved working 10-hour shifts. Most of those shifts were spent in a motor vehicle, patrolling, investigating, and, in general, performing the duties of a street officer. During those shifts, he was required to wear a gun belt with a holster, gun, bullets, and handcuffs.

In April 1987, the employee began to experience "some new types of pains" in his low back. The pain, discomfort, and difficulty in performing his work gradually increased and finally he returned to his treating physician, Dr. Whitlock, in September 1987. Dr. Whitlock did not testify and no report from Dr. Whitlock is found in the record. However, in the employee's medical history given to Dr. Folck in a subsequent evaluation in March 1988, Dr. Whitlock was quoted as telling the employee that working the 10-hour shifts and carrying the heavy weapon and belt aggravated and reinjured his back.[3] The employee never went back to work as a street patrolman after September 1987 and, ultimately, in December 1987, he applied for, and was granted, his duty-connected disability pension. Additionally, on October 8, 1987, he filed this claim for workers' compensation claiming that an injury occurred during the period April 2, 1987, through September 29, 1987, as a result of "[l]ong hours of continuous operating and sitting in a patrol automobile, along with the strain of wearing of a side arm."

Dr. Folck testified that the employee's condition was much worse in March 1988 than when he first saw him in February 1987. In March 1988, as a result of examining the employee, he found the following worsened conditions: (a) substantial loss of back motion compared to the previous exam, (b) increased tenderness, (c) additional atrophy of his right calf, and (d) loss of right Achilles reflex (caused by either additional pressure from scar tissue or his prolonged activities and behavior). Dr. Folck testified that the employee has a 35% permanent partial disability of the body as a whole. He further testified that the employee's long hours of work and prolonged sitting after he returned to work, and especially the wearing of the belt with gun, holster, and bullets to one side, served to irritate and aggravate his back and, in fact, injure his back to the point that he had the additional disability.

Following a hearing, the Administrative Law Judge determined that the employee's preexisting condition was aggravated by

---

**2.** Dr. Folck limited his practice to "occupational medicine and disability evaluation."

**3.** The evidence of Dr. Whitlock's statements, as contained in Dr. Folck's testimony and in his report, were received in evidence without objection.

his work-related activities and, accordingly, he considered the increased problems experienced by the employee to be a job-related injury. He further determined that the employee's permanent partial disability relating to the 1987 accident was 20%[4] and awarded him $12,951.20 in permanent partial disability compensation. With one member dissenting, the Commission affirmed the award of the Administrative Law Judge and incorporated his findings as part of its order. From that final award of the Commission, the employer appeals.

## DISCUSSION AND DECISION

In its single point on appeal, the employer claims there was no substantial and competent evidence to support the Commission's order. In support of that argument, it points to testimony of the employee and Dr. Folck which it claims demonstrates that the employee's complaints and disability after April 1987 all related to his 1986 accident and not to any new or additional accident. We disagree with that argument for the reasons which follow.

Beginning with *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781 (Mo. banc 1983), the term *accident* includes not only those injuries which result from an unforeseen and unusual event but also includes those cases where the result, the injury itself, was unforeseen or unexpected.[5] "Where the performance of the usual and customary duties of an employee leads to physical breakdown or a change in pathology, the injury is compensable." *Id.* at 784. The focus must be on whether "an injury has occurred rather than what act or force immediately preceded the injury." *Id.* at 785. The cause of the injury need not be a single, traumatic event; rather, an employee is to be com-

pensated for gradual and progressive injuries which result from repeated or constant exposure to on-the-job hazards. *Id.* 785. *See, e.g., Davis v. Butler Mfg. Co.,* 659 S.W.2d 523, 525 (Mo.App.1983). "The end result of *Wolfgeher* was to abandon a narrow construction of the term 'accident' and attain congruency with the majority of states which have eliminated the abnormal or unusual strain requirement for ... job related injuries...." *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87, 89 (Mo. banc 1983). The employee's work need only be a contributing factor to the injury; it is not necessary that his work be the sole cause, or even the primary cause, of the injury and "the right to compensation should exist if the actual triggering causes are found, on the basis of substantial evidence, to meet the 'job related' or 'work related' test of *Wolfgeher.*" *Wynn,* 654 S.W.2d at 89–90. *See Foley v. Pipefitters Union,* 762 S.W.2d 870, 871 (Mo.App.1989); *Arens v. Delcon Corp.,* 760 S.W.2d 914, 916 (Mo.App.1988); *Ford Motor Co. v. Dickens,* 700 S.W.2d 484, 487 (Mo.App. 1985).

The employer cites us to the § 287.020, RSMo 1986, definition of accident and then argues that while *Wolfgeher* "broadened the class of injuries to which the Missouri Workers' Compensation Law extended," still a claimant must prove an "unexpected event and resulting trauma." That argument misconceives what *Wolfgeher* says. *Wolfgeher* makes it clear that we must focus on whether a different or additional injury occurred rather than what force or trauma preceded the additional injury. The employer attempts to distinguish *Wolfgeher* from this case by arguing that the employee's complaints and injuries in 1987 were not the result of a new accident but

---

4. The Administrative Law Judge found that the employee's preexisting disability from the 1986 accident was conclusively determined to be 15% by reason of the April 2, 1987, compromise settlement and by reason of § 287.190.6, RSMo 1986. Deducting the 15% rating from the 35% rating made as of March 1988, the Administrative Law Judge found the employee's additional disability rating attributable to the 1987 accident to be 20%.

5. *See* Mo. Workers' Compensation Law, § 4.2 (Mo.Bar Supp.1988), where *Wolfgeher* was described as a case which has had and will continue to have a profound effect on the interpretation and application of the statutory sections defining and otherwise dealing with "injury, accident...."

were merely a continuation of the pain and complaints from the 1986 accident.

The record reveals that when he was released to go back to work in December 1986 and through April 2, 1987, the employee had tenderness in his low back. Dr. Folck testified that in March 1987, the employee had some moderate soft tissue thickening in the region of his surgery, he had limitation of motion, and that it was reasonable to assume that, as a result of the 1986 injury, the employee would have some pain, difficulty, and discomfort, including fatigue and weakness. However, Dr. Folck further testified that those conditions and expectations were considered when, in March 1987, he rated the employee as having 20% permanent disability. When the employee's treating physician, Dr. Whitlock, released the employee to return to his normal duties in December 1986, he rated his permanent partial disability at 10%. Yet, according to the history given Dr. Folck by the employee in March 1988, when the employee returned to see Dr. Whitlock in September 1987, Dr. Whitlock advised him that his long hours of work and the carrying of a heavy weapon, holster, belt, and accessories had served to "aggravate and reinjure his back." Again, according to the history given to Dr. Folck by the employee, Dr. Whitlock advised the employee he should "give up" his job. The employee was approved for disability retirement as of December 1987. The medical evidence was that the employee presented a "much worse" clinical picture in March 1988 than existed on February 3, 1987. Dr. Folck attributed the employee's deteriorated condition to "subsequent irritation and aggravation by ... overwork and a phenomena of wearing a heavy belt, ammunition revolver, which is commonly known as the wallet syndrome." When asked to explain what the "wallet syndrome" was, Dr. Folck reported:

> This is an explanation of back pain, backache, back discomfort superimposed on usually a prior injury to the back of some type. The wallet that men—the majority of men carry, they carry in one of their hind trouser pockets and it has been described *it serves as a trigger to cause a contortion of the pelvis and a strain on the lower back and irritation of the lower back.* It is called wallet syndrome and it is based on a physical phenomenon. Certainly it could easily be involved in this instance where we have a police officer with a belt and ammunition would certainly cause a tilting of the pelvis. (Emphasis added.)

According to Dr. Folck, the long hours of work and the wearing of the ammunition belt with gun, holster, and bullets on one side had served to irritate and aggravate his condition and, in fact, injured his back to the point that he had an additional disability of the body as a whole to 35%.

Such medical evidence, coupled with the employee's testimony, is sufficient to sustain the award. Despite the employee's preexisting low back disability, there was substantial medical evidence that (a) from April 2, 1987, through September 1987, the degree of the employee's permanent disability increased, and (b) the triggering cause of the employee's additional disability was the long hours of riding in a patrol car with a gun, holster, belt, and bullets on one side. *See Foley,* 762 S.W.2d at 871. The employee offered the medical evidence necessary to prove the extent of his preexisting disability and to prove the extent of any additional disability incurred by reason of the job-related injury suffered after April 2, 1987. *See Sansone v. Joseph Sansone Constr. Co.,* 764 S.W.2d 751, 752 (Mo. App.1989). *But c.f. Plaster v. Dayco Corp.,* 760 S.W.2d 911, 913 (Mo.App.1988). The employee offered medical evidence that the performance of his usual and customary duties as a policeman led to a change in pathology, a worsening of his preexisting condition. As such there was sufficient evidence before the Commission to support its determination that the employee, after April 2, 1987, had sustained an additional work-related injury within the meaning of *Wolfgeher* and that the injury was compensable.

The employer's reliance on *Causey,* 774 S.W.2d 898; *Hawkins v. Emerson Elec. Co.,* 676 S.W.2d 872 (Mo.App.1984), and *Vickery v. ACF Indus., Inc.,* 454 S.W.2d

620 (Mo.App.1970), is unavailing. In *Hawkins* the Commission found that the claimant sustained a work-related back injury but, based upon conflicting medical testimony, found that she sustained no permanent partial disability as a result of that injury. This court affirmed that judgment because "[w]hen medical theories conflict, deciding which to accept is an issue peculiarly for the determination of the Commission." *Id.* at 877. In *Vickery*, the claimant attempted to recover compensation for injury to his hip and back. The Commission found, based upon the evidence, that the injury complained of did not arise out of a work-related accident.

In *Causey* the Commission denied compensation to the claimant on her claim that she suffered from a work-related carpal tunnel syndrome. This court affirmed, noting that the Commission rejected the testimony of the claimant and her physician and accepted as credible the testimony of a physician presented by the employer. The employer's physician stated that the employee did not suffer from carpal tunnel syndrome but from another disease unrelated to her employment. Each of the cases relied upon by the employer turned on fact issues, the resolution of which the appellate court did not disturb. They are not authority for the proposition that the Commission erred in the instant case.

We affirm.

PREWITT and PARRISH, JJ., and KEET, Special Judge, concur.

FLANIGAN, C.J., and MAUS, J., dissent in separate opinions.

CROW, J., dissents and concurs in the dissenting opinions of FLANIGAN, C.J., and MAUS, J.

MONTGOMERY, J., recuses.

FLANIGAN, Chief Judge, dissenting.

I respectfully dissent.

"[A] voluntary compromise settlement agreement made and executed by the parties under [§ 287.390], and approved by the commission, is not thereafter reviewable on the ground of a change in condition." *Dewey v. Union Electric Light & Power Co.*, 83 S.W.2d 203, 206 (Mo.App.1935) (overruled on other grounds, *Wentz v. Price Candy Co.*, 175 S.W.2d 852, 856 (Mo. 1943)).

Claimant returned to work in December 1986. Claimant's testimony was that he experienced a new type of pain. This happened, he said, "the first part of it, I think, was around April sometime, April 1987."

This compromise settlement was approved by the commission on April 2, 1987. The claim alleges that the date of the accident, on which the instant award is based, was "4–3–87 through 9–29–87."

I find nothing in the record to support a finding that the present complaints are attributable to conditions which arose the very next day following the compromise and not prior thereto.

MAUS, Judge, dissenting.

I dissent. It is fundamental that the liability of an employer to pay, and the right of an employee to recover, workers' compensation is statutory. Such a cause of action is created by and is governed by Chapter 287, The Workers' Compensation Law, RSMo 1986. The provisions of that code are to be construed as a whole. *Marie v. Standard Steel Works*, 319 S.W.2d 871 (Mo. banc 1959).

The basic concept of that code is that an employee has a right to compensation for disability resulting from an accident. "Accident" is defined as:

"The word '**accident**' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 287.020.2.

Historically, it was held that an "injury itself could not constitute the 'event' or 'accident'." *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 784 (Mo. banc 1983), citing *State ex rel. Hussman-Ligonier Co. v. Hughes*, 348 Mo. 319, 326, 153 S.W.2d 40, 42 (1941).

" 'True, proof of fault or negligence has been dispensed with, but proof of "accident" is necessary. Nor does the injury itself constitute the "event" or "accident" as held by the court of appeals. To so hold would make the Act provide for insurance against disease and injury rather than against accident. *Id.* 153 S.W.2d at 42 [Hussman]." *Wolfgeher,* 646 S.W.2d at 784.

The definition of accident was judicially modified in *Wolfgeher.* In that case, the employee suffered an injury to his back while moving a refrigerator although he did not perform that work in an abnormal manner or suffer a slip or a fall. Recovery was allowed because the injury itself was unexpected and arose from the employment. In so holding, the court made the following observations:

"The Missouri rule is in contrast with the overwhelming majority of states which hold that a strain is compensable even though the work being performed at the time of the injury was routine and the strain was not unusual or abnormal. IB Larson, Workmen's Compensation Law, § 38.20 (1980) and cases cited therein. Where the performance of the usual and customary duties of an employee leads to physical breakdown or a change in pathology, the injury is compensable. (Citations omitted)....

\* \* \* \* \* \*

This concept of 'accident' also prevents compensation for gradual and progressive injuries which result from repeated or constant exposure to on-the-job hazards, even though the injuries are clearly work related. (Citations omitted)." *Wolfgeher,* 646 S.W.2d at 784, 785.

The impact of *Wolfgeher* has been succinctly stated by the Supreme Court in the following terms.

"The end result of *Wolfgeher* was to abandon a narrow construction of the term 'accident' and attain congruency with the majority of states which have eliminated the abnormal or unusual strain requirement for not only job related injuries but for accidents of the type suffered by Mr. Wynn—a work related heart attack during the course of his employment without regard to unusual or abnormal strain. (Footnote omitted)." *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87, 89 (Mo. banc 1983).

However, the language in *Wolfgeher* has been construed to permit recovery not only for disability from a physical injury suddenly produced but for a progressive disability arising over a period of time in the absence of any sudden physical change. In dictum it has been said:

"*Wolfgeher* does not eliminate the statutory requirement of accident but dispenses with the employee's need to prove abnormal or unusual strain to show an accident. In essence, *Wolfgeher* permits the concept of 'accident' to encompass gradual and progressive injuries resulting from repeated exposure to on-the-job hazards. *Wolfgeher, supra,* at 785." *Westerhold v. Unitog–Holden Mfg. Co.,* 707 S.W.2d 456, 458 (Mo.App.1986).

It is on this basis that cardiac dysrhythmia has been found to have resulted from an accident. *Low v. ACF Industries,* 772 S.W.2d 904 (Mo.App.1989). The same is true of "carpenter's elbow". *Sansone v. Joseph Sansone Const. Co.,* 764 S.W.2d 751 (Mo.App.1989).

Nonetheless, the modification of the definition of the term "accident" accomplished by *Wolfgeher,* has not been reconciled with the balance of the code, the terms of which contemplate an accident to be "an unexpected or unforeseen event happening suddenly and violently."

An example is the following statutory definition: "The terms 'injury' and 'personal injuries' shall mean violence to the physical structure of the body.... These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form...." § 287.020.3.

The basic liability of an employer is created by the following language.

"Every employer ... shall be liable, irrespective of negligence, to furnish compensation ... for personal injury or death of the employee *by accident* arising out of and in the course of his em-

ployment ...." § 287.120.1. (Emphasis added.)

It is difficult to rationalize that an injury can be found to be caused *by accident* arising out of and in the course of employment merely because it is a work-related injury.

In this case, the "accident" of April to September 1987 was neither evidenced by a sudden injury nor by an event. There was no "triggering cause". The disability was manifested by gradually increasing symptoms and complaints. The facts of the case raise a question of compensability even under *Wolfgeher*, as there was neither a sudden injury nor an event. For example, a carpal tunnel syndrome occurring gradually has been declared to be an occupational disease. *Collins v. Neevel Luggage Manufacturing Company*, 481 S.W.2d 548 (Mo. App.1972); *Jackson v. Risby Pallet and Lumber Co.*, 736 S.W.2d 575 (Mo.App. 1987). This case could also raise a question of the application of the "Second Injury Fund" statute. § 287.220.

However, it is not necessary to resolve those issues to decide this case. I believe Rector's claim of disability from the "accident" of April through September is barred by the settlement of his claim arising from the accident in July 1986 in which he suffered a herniated intervertebral disc.

That settlement, in part, recites:

"[T]hat on or about the 23rd day of July, 1986, Harvey Rector, while in the employ of City of Springfield, sustained an accident arising out of and in the course of employment in Springfield, Greene County, Missouri; that said accident resulted in an injury to body as a whole, approximately 15 percent permanent partial disability; ...

\*     \*     \*     \*     \*     \*

"that there is now a dispute between the employer and employee as to nature and extent of disability; that because of said dispute it is agreed by said parties to enter into a compromise to sum settlement under Section 287.390 RSMo., 1969, for the payment of a lump sum of ..."

The reference in that recitation to "body as a whole, approximately 15 percent permanent partial disability" is not a determination that Rector sustained disability of 15% from the July 1986 accident. The Schedule of Losses for various parts of the body does not include the back. The use of the words "approximately 15 percent permanent partial disability" is a reference to the fact Rector suffered a back injury. The compromise settlement approved by the commission does not fix the extent of Rector's disability from the July 1986 accident at 15%. It was not unexpected that he would return to work and wear a gun belt. Moreover, it was contemplated that Rector would suffer from continuing disability, including pain and discomfort in physical activities. Whether that disability was 5% or 35%, his disability arising from that accident has been compromised and settled by the lump sum settlement.

The scope of review by this court has been defined by statute. That statute, in part, provides:

"I. ... The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

\*     \*     \*     \*     \*     \*

(4) That there was not sufficient competent evidence in the record to warrant the making of the award." § 287.495.-1(4).

That authorization is to be applied in the light of the following mandate.

"In a workers' compensation case, the claimant carries the burden of proving all essential elements of the claim. (Citation omitted)." *Fischer v. Archdiocese of St. Louis*, 793 S.W.2d 195, 198 (Mo.App. 1990).

The only evidence in this case to establish there was an injury or an accident from April to September 1987 is evidence of increased complaints concerning back pain. The claimant admitted suffering increased back pain in February 1987, even before the lump sum settlement was approved on April 8, 1987. The claimant's right to recover rests solely upon the testimony of William P. Folck, M.D. His testimony includes the following:

"[CROSS–EXAMINATION BY MR. GEISLER]:

Q. Doctor, based upon the July 23rd, 1986 accident, it's my understanding that it's your opinion that Harvey Rector sustained a permanent partial disability of 20 percent to the body as a whole?

A. Yes.

Q. And that injury resulted in surgery which was performed by Dr. Whitlock on September 13, 1986, correct?

A. Yes.

Q. What type of surgery was that?

A. It was removal of a herniated intervertebral disk [sic], according to Mr. Rector.

Q. Is that a fairly serious back injury?

A. I consider it serious, yes.

Q. With a fairly serious back injury, would you expect a person such as Harvey Rector to even after surgery have back pain?

A. I would expect him to, yes."

\*　　\*　　\*　　\*　　\*　　\*

Q. He basically said that after he returned to work, he found that he had back pain which he attributed to the wearing of the uniform and sitting in and driving a patrol car? I'm sorry, let me rephrase it. In other words, when you saw him on March 3rd, 1988, he basically told you that the pain and the discomfort he attributed to the wearing of an ammunition belt and gun and sitting in a patrol car for long periods of time?

A. That is correct.

Q. That did not surprise you, did it, Doctor?

A. I felt that he would have that problem. No, I was not surprised; surprised only to the extent.

\*　　\*　　\*　　\*　　\*　　\*

Q. When you saw Mr. Rector on March 3rd, 1988, did he complain about any portion of his body different from what he complained to you about when you saw him on February 3rd, 1987?

A. No.

\*　　\*　　\*　　\*　　\*　　\*

Q. As I believe, Doctor, you've indicated, the fact that he returned and complained of these complaints did not surprise you because you were aware of his serious back injury, correct?

A. I was not surprised that he was having troubles; I was surprised only to the extent."

The nature of the claim under consideration can best be visualized by contemplating the allegations of the claim Rector would have filed if he had not entered into the compromise settlement. If the settlement process is to have meaning, the amendment of the definition of "accident" to include gradual and progressive injuries, must be construed to exclude symptoms arising from an initial injury even though those symptoms are more severe than anticipated.

The "extent" of the disability arising from the accident of July 1986, whether expected or unexpected, was determined by the settlement of April 8, 1987 and compensated by the lump sum settlement. This settlement was conclusive and bars the present claim resulting from unexpected complaints. Rector has not carried his burden of proving that his increased complaints were caused by a second accident, even as that term is defined by *Wolfgeher*. For this reason, I would reverse the award of compensation.